[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a termination of parental rights proceeding initiated by the Department of Children and Families (DCF). The subject minor children are Devanice A. (d.o.b. December 21, 1989) and Lexus M. (d.o.b. September 20, 1993). CT Page 10804
Deltrace G., the biological mother of both children, is a respondent in the matter. Darrelle A., the biological father of Devanice, and Lawrence D., the putative biological father of Lexus M.,[1] were also named as respondents. Vera A., the paternal grandmother of Devanice A., was granted permission by the court to intervene in the case with respect to the dispositional phase of the trial.
Procedural Context
This case first came to the attention of the Superior Court for Juvenile Matters in Hartford on March 7, 1994 when DCF received ex parte orders of temporary custody, and filed neglect petitions, concerning both children. Devanice and Lexus were committed to the petitioner's custody for 18 months on May 11, 1994, when they were adjudicated by the court as neglected and uncared for children. These commitments were subsequently extended on November 11, 1996, and on November 11, 1997.
DCF filed the instant TPR petitions with the Superior Court for Juvenile Matters in Hartford on March 14, 1996. The matter was subsequently transferred to this venue for trial. Pursuant to C.G.S. 17a-112, DCF originally alleged counts of abandonment, parental failure to rehabilitate, and lack of an on-going parent-child relationship[2] against all respondents.
On May 16, 1997, this Court granted the motion of the paternal grandmother, Vera A., to intervene as an interested party in the dispositional phase of the trial.
The trial commenced at the Child Protection Session in Middletown on June 4, 1997. It was continued on June 5, June 6, August 19, August 20, August 25, August 26, and August 27, when the trial concluded. Following the conclusion of evidence and testimony, some of the parties requested and received permission to file post-trial memoranda of fact and law. The last of these was received by the court on September 18, 1997.
The petitioner introduced 14 full exhibits into evidence at trial, as well as the testimony of the following witnesses:
1. Sandra Liquindoli, DCF social worker;
2. Louise Irwin, DCF supervisor; CT Page 10805
3. Theresa Kreibick, licensed clinical psychologist;
4. Barbara Tylenda, licensed clinical psychologist;
5. Angelique Pearson, DCF social worker.
The respondent mother, who was present and represented by her attorney on each day of the proceeding, submitted 16 full exhibits into evidence, and testified on her own behalf. The respondent father, Darrelle A., was represented by his counsel throughout the proceeding. He elected to personally attend much, but not all, of the proceeding. Darrelle A. did not offer evidence or testimony. The putative father of Lexus M., Lawrence D., did not appear at trial, and was not represented by counsel.
The intervenor, Vera A., and her counsel, were excused from attendance at court when the trial began. However, when it became apparent that dispositional matters were being addressed at trial on June 5th, the court directed that the intervenor and counsel appear on June 6th. A case conference was held on the record with all counsel prior to the resumption of the trial on June 6th. The gravamen of any disposition-related testimony which was heard in the absence of the intervenor and her counsel was disclosed, and the court ordered that transcripts of the prior proceedings be provided to intervenor's counsel. The court also ordered that any witnesses examined in the absence of intervenor's counsel could be recalled later in the trial by the intervenor. The intervenor, and her counsel, stipulated on June 6th that these measures were acceptable to them, and that the trial could continue, despite their earlier absence.
The intervenor, and her counsel, were present each day throughout the remainder of the trial. Vera A. testified on her own behalf and recalled Dr. Kriebick, who had testified earlier at trial for the petitioner. Vera A. also introduced two exhibits into evidence at trial. She was permitted, in accordance with an agreement of the parties, to submit the text of affidavits from Bishop Andrew McCrorey and Hazel DiModugno into evidence when she submitted her post-trial memorandum. These two documents, which were appended to the memorandum filed with the court on September 18, 1997, have been reviewed and considered by the court as evidence related to the dispositional phase of this proceeding.
Counsel for the minor child participated fully in the CT Page 10806 termination trial. He introduced three full exhibits into evidence.
Findings of Fact
Having carefully considered all of the evidence and testimony adduced at trial, the court makes the following findings of fact:
Lawrence D., the putative father of Lexus M., has never played any type of parental role whatsoever in the life of this child.
Darrelle A., the biological father of Devanice A., has not displayed interest in fulfilling parental responsibilities for his daughter. The DCF social study which was prepared in connection with this matter notes that Darrelle A. ". . . has not seen his daughter in nearly two years. He has telephoned her twice in two years." (Petitioner's Exhibit 6, Page 18.) DCF case activity notes from April 25, 1994 reflect a telephone call between the social worker and Darrelle A:
 "[Darrelle A.] stated he can care for Devanice, although he takes frequent trips to New York. He stated that he is a carpenter and a part-time drug dealer, then he retracted and said that he was kidding."
(Intervenor's Exhibit 1, Page 3)
The social worker's activity notes also indicate that during this conversation, Darrelle A. indicated that his mother, Vera A., should raise Devanice:
 ". . . he feels that Devanice should be raised by immediate family, for instance, his mother has expressed an interest to care for Devanice. [Darrelle A.] further stressed that he cannot take care of his child because he is a drug dealer and he makes too many trips to New York."
(Petitioner's Exhibit 1, Page 4).
The court finds that Darrelle A. has abrogated his responsibilities as the father of Devanice and has not played a meaningful role in her life. His primary interest in this child CT Page 10807 appears to be a desire that paternal relatives be permitted to raise her.
Deltrace G. has an unfortunate history of mental health problems and chronic substance abuse. (Respondent Mother's Exhibit H, Page 1). DCF filed its neglect petitions and received temporary custody of the two children when the mother was admitted to Hartford Hospital after what was described as her third suicide attempt.
When the children were committed to DCF's custody on May 11, 1994, Deltrace G. signed court-approved expectations. She promised that she would keep all appointments set by or with DCF, visit her children as often as permitted, keep her attorney and the petitioner advised of her whereabouts, participate in individual and drug/alcohol counseling, comply with medical recommendations for support and/or medication, secure and maintain adequate housing and income, refrain from substance abuse and further involvement with the criminal justice system, and sign releases requested by DCF and the Child In Placement Program. (Petitioner's Exhibit 4).
Those expectations were agreed to by the mother and her counsel, and were approved by the Honorable Francis Foley at Superior Court for Juvenile Matters in Hartford on May 11, 1994. The expectation form which Deltrace G. signed contained the following written notice:
 "If you fulfill the court's expectations, you will improve your chances of regaining, or keeping guardianship of your child permanently. Failure to achieve these goals will increase the chances that a petition may be filed to terminate your parental rights permanently so that your child may be placed in adoption. If you need help in reaching any of these expectations, contact your lawyer and/or DCF worker." (Petitioner's Exhibit 4).
The court finds that Deltrace G. was unsuccessful in meeting the majority of these expectations during the period between May 11, 1994 and March 14, 1996.
From the date the children were placed in March of 1994, until DCF suspended the mother's visitation in September 1995, Deltrace G. only visited her daughters 11 times. She telephoned CT Page 10808 them seven times during this period, and sent gifts and clothing on four occasions. During this period of approximately 17 months, she could have visited the children on a daily basis. (Petitioner's Exhibit 6, Page 18). DCF described the respondent's contacts with her daughters as being ". . . exceedingly inconsistent based on the liberal visitation/telephone schedule [the foster mother] has afforded this mother." (Petitioner's Exhibit 6, Page 18).
During her testimony at trial, Deltrace G. explained that her sporadic visitation with Devanice and Lexus was attributable to transportation problems, and to hospitalizations which she experienced around this time. She also claimed that the children's foster mother, Jean H., frustrated her visitation. The court is unpersuaded by these assertions. DCF provided the mother with a bus pass which she could have used to travel to the foster home. Furthermore, even though the mother was hospitalized at times, including more than 21 days between August and December 1994, this does not account for her limited telephone contacts with the children.
During the two years which transpired from the date the children were placed in DCF custody until the date when the TPR petitions were filed, Deltrace G. continued to abuse drugs and to rebuff sincere offers of treatment for her chemical dependency.
The respondent admitted during a 1997 psychological evaluation that she had continued to abuse both drugs and alcohol until she was hospitalized at Elmcrest Hospital in June 1996. (Respondent Mother's Exhibit J, Page 2). This was more than two years after the children were removed from her custody. The March 1997 evaluation report of Sergio Mejia, M.D., a psychiatrist at the Institute of Living noted that:
 "The patient said that she was `an addict and for quite some time, her behavior had been totally out of control.' She acknowledged heavy use of cocaine and alcohol on a regular basis."
(Respondent Mother's Exhibit J, Page 1).
In early January 1995, the petitioner arranged for Deltrace G. to be screened at the Lifeline Drug Rehabilitation Program. The respondent did not keep this appointment. (Petitioner's Exhibit 6, Page 16.) CT Page 10809
In March 1995, DCF coordinated an appointment for the mother with a Parent Aide program. She failed to attend this appointment. (Petitioner's Exhibit 6, Page 16).
Deltrace G. was uncooperative with a psychological evaluation conducted by Adelia Moore, PhD., of the Charter Oak Terrace Rice Height Center. Between December 1994 and the Spring of 1995, she missed four scheduled appointments with Dr. Moore. (Petitioner's Exhibit 6, Page 16). Deltrace G. also failed to keep an appointment with the ADRC substance treatment program. She was treated for substance abuse at the Blue Hills Clinic on an in-patient basis from July 14, 1995 through August 17, 1995. The DCF social study notes that the mother did not follow through with treatment recommendations made by the clinic, and was unwilling to take the steps necessary to achieve long-term sobriety. (Petitioner's Exhibit 6, Page 17).
The respondent also refused to cooperate with a chemical dependency program offered by Community Health Services. She was discharged from treatment there on January 29, 1996 after attending two of six scheduled sessions, and failing to follow through with her treatment plan. (Petitioner's Exhibit 6, Page 17).
On February 19, 1996, Deltrace G. missed a scheduled psychological evaluation and drug assessment which had been arranged at an agency known as Advanced Behavioral Health Inc. (Petitioner's Exhibit 6, Page 18).
The court finds, based on the mother's own admissions about her abuse of alcohol and drugs, her failure to cooperate with numerous offers of appropriate treatment over an extended period of time, and her sporadic contact with both children, that Deltrace G.'s chemical dependency separated her from Devanice and Lexus, and rendered her unable to parent these children, or achieve reunification with them, during the period between March 7, 1994 and March 14, 1996.
While the mother persisted in her abuse of illegal drugs and alcohol, the children remained in foster care. Deltrace G.'s inconsistent visitation had a strong negative impact on Devanice, who has serious psychological and behavioral problems.
Dr. Theresa Kreibick, a licensed clinical psychologist, is CT Page 10810 Devanice's therapist. She has had 30-40 therapeutic contacts with the child. She testified that Devanice has been diagnosed with Reactive Attachment Disorder, Oppositional Defiant Disorder and Post Traumatic Stress Disorder. Dr. Kreibick rendered the opinion, which the court accepts as fact, that Devanice's post traumatic stress disorder is related to the mother's inconsistent visitation, and the child's perception that Deltrace G. is unable to protect her. Per Dr. Kreibick, Devanice suffered from nightmares and engaged in misbehavior when the mother failed to appear for visits.
After Devanice was placed in foster care, she engaged in behavior which suggested that she had been sexually abused. The child was assessed for sexual abuse at St. Francis Hospital (Petitioner's Exhibit 6, Pages 10-11), and was psychologically evaluated by Dr. Barbara Tylenda of the Newington Children's Hospital staff.
It was not established conclusively during this trial when, or by whom, Devanice was sexually traumatized. The court is mindful of the arguments espoused by the respondent mother and the intervenor that the child had three foster care placements. However, the nature of Devanice's sexualized behavior, and the findings of the professionals in this matter, lead the court to conclude that Devanice was either sexually abused, or inappropriately exposed to the sexual activity of others.
The court also finds that Devanice fears and blames Deltrace G. Dr. Tylenda testified at trial that she was "moved" by how strongly Devanice fears retaliation by her mother. Dr. Kreibick concluded that Devanice blames her mother for what has happened to her in the mother's care.
In her 1995 evaluation of Devanice, Dr. Tylenda wrote that:
 ". . . given the material that was uncovered during this evaluation regarding violence and exposure to, and possible participation in, sexual activity within her home of origin, it is strongly recommended that Devanice not be reunited with her mother."
(Petitioner's Exhibit 6, Page 12).
Dr. Tylenda testified at trial that Devanice has a high level CT Page 10811 of fear and anxiety regarding her mother.
In March 1995, Devanice told Dr. Kreibick that she no longer wanted to visit her mother. Dr. Kreibick opined at trial that when Deltrace G. did see her daughter, Devanice would misbehave and exhibit signs of traumatization afterwards. She recommended that the mother's visitation be terminated due to Devanice's inability to tolerate the inconsistency of the respondent's contact, and the child's perceptions that her mother could not protect her. Dr. Kreibick testified at trial that Devanice could not "psychologically sustain" further visits with her mother, and was at risk of decompensation and possible psychiatric hospitalization if reunited with Deltrace G. Dr. Tylenda also recommended that the respondent's visitation be ended. DCF terminated Deltrace G.'s visitation with both Devanice and Lexus in September 1995. This decision was subsequently upheld at an administrative hearing conducted by the petitioner. As a result of this action, the mother has not seen either daughter since that time. On November 11, 1995, the court (Keller, J.) entered a finding that continued efforts at reunification were no longer appropriate.
The court finds, under all of the facts and circumstances of this case, that the petitioner's decision to cut off parental contacts was a reasonable one. Specifically, the court accepts as credible and appropriate the opinions of Dr. Kreibick and Dr. Tylenda that visits with Deltrace G. were disruptive and damaging to Devanice. The mother's chronic substance abuse (which by her own admission continued until June 1996) her infrequent contacts with both children, and the deleterious psychological impact which the visits had on Devanice, justified the termination of visits as being in the best interests of both children.
There was evidence at trial that Deltrace G. has made progress in dealing with her severe drug/alcohol problem since the summer of 1996. Dr. Mejia evaluated the mother in March 1997, and wrote in his report dated April 14, 1997:
 "In the summer of 1996, at long last, the patient had one more treatment episode at Elmcrest Psychiatric Institute following which by her own account, she has been able to stay substance free. She described feelings of sadness which she attributes to not having her children and characterizes as being different from being CT Page 10812 depressed. She has her youngest child with her, and she reported that she is caring for this child quite well. On the other hand, there is her history, a relatively short period of time of her being substance-free, her having discontinued her medications against the physician's advice, and her not attending AA on the excuse that she does not have transportation." (Mother's Exhibit J, Page 6).
Dr. Mejia recommended that " . . . there are several things that, in my opinion, ought to be done before any decision can be made about [the mother's] suitability to care for her children. [Mother's Exhibit J, Page 6). He suggested that Deltrace G. undergo random testing for illegal drugs, cooperate with "on-the-spot home visits" by a trained worker who could assess the adequacy of the care she provides to the child in her custody, receive regular psychotherapy, and consistently attend self-help groups such as Narcotics Anonymous or Alcoholics Anonymous. (Respondent Mother's Exhibit J, Page 6).
Dr. Mejia also wrote that "While it is encouraging and commendable that [Deltrace G.] has been clean for several months, the risk of a relapse of either her substance abuse or her depression, or more likely both, is certainly high and much more so with the added stress of having two children to incorporate into her life should her children be given back to her." (Respondent Mother's Exhibit J, Page 6).
Deltrace G. testified at trial. She admitted she continued to abuse illegal drugs until May or June 1996. She indicated that prior to that time she had not decided that she needed to get her act together. She claimed at trial that she has not used illegal drugs or controlled substances since June, 1996. She testified that she still consumes small amounts of alcoholic beverages, but believes that drug addiction was her primary problem.
Deltrace G. testified that she was diagnosed with diabetes in the fall of 1996. She testified, however, that her diagnosis with that disease was not the motivating factor in her decision to abstain from drugs. She introduced into evidence lab results of blood and urine tests taken in connection with her diabetes treatment which she claims would have revealed drugs or alcohol in her system. Deltrace G. also introduced the results of drug screen tests to which she voluntarily submitted on May 21, 1997 and July 1, 1997 (Respondent Mother's Exhibit M). Both were CT Page 10813 negative for illegal drugs.
Deltrace G. was admitted to Elmcrest on June 6, 1996 and was discharged from the partial hospitalization program there on September 9, 1996. (Respondent Mother's Exhibit H-2). The Elmcrest discharge summary notes that:
 "The patient was admitted as an inpatient at Elmcrest with an increase in cocaine and alcohol abuse and reported severe depression with suicidal ideation. The patient stated that she wanted to stop drinking and eliminate her suicidal thoughts."
(Respondent Mother's Exhibit H-2, Page 1).
The Elmcrest Discharge summary concluded:
 "There has been some improvement in her condition since her admission to the partial hospital program, although she has not been able to complete the program she has been absent on a number of different occasions, apparently having to do with child care. She, however, has maintained stability and has taken her medications as prescribed."
(Respondent Mother's Exhibit H-2, Pages 2-3).
Deltrace G. testified that she has been receiving psychotherapy on an out-patient basis with Dr. Norman Andrekus, a psychologist at Kaiser Permanente, since her discharge from the Elmcrest program in September 1996. She testified that she does not attend NA or AA meetings, but attends support groups similar to them as part of her ongoing psychotherapy.
ADJUDICATION OF DELTRACE G.
(Based on facts as of March 14, 1996)
1. No on-going parent child relationship:
C.G.S. § 17a-112 (b) (4) defines an ongoing parent-child relationship as "the relationship which ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of a child." CT Page 10814
The court is mindful of the reality that non-custodial parents cannot meet the daily needs of a child from whom they are physically separated. In re Valerie D., 223 Conn. 492 (1992). In cases such as the present one, the ultimate standard which the court must apply is whether or not the child has any memories of, or feelings toward, the parent which are positive in nature. Inre Jessica M., 217 Conn. 459, 468-469 (1991).
There was evidence at trial, which the court accepts, that Devanice fears her biological mother, blames her for the past trauma in her life, and does not wish to live with her. The court also accepts as fact the evidence which established that the child has bonded with her foster mother, Jean H., whom she regards as her "real Mommy."
The court also notes, however, the statement of DCF social worker Angelique Pearson in her March 14, 1996 social study:
 "[Devanice A.] states that although she loves her mother, she stated to her therapist and to DCF that she does not want to live with her mother as she is scared. (Petitioner's Exhibit 6, Page 20)
Based on the forgoing, the court finds that the petitioner has not proven by clear and convincing evidence that, for a period of time longer than one year, Devanice has had no memories or feelings about her mother which are positive in nature. Accordingly, this count of the petition as to the respondent Deltrace G., is hereby dismissed. (As noted above, DCF has previously withdrawn this count against the mother with respect to Lexus M.).
2. Failure to Rehabilitate: The statutory criteria which apply to this ground for termination of parental rights are set forth in C.G.S 17a-112 (b) (2). The statute applies in those cases where:
 "the parents of a child who has been found by the superior court to have been neglected or uncared for have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child." CT Page 10815
The term "personal rehabilitation" is not defined in the statute. Connecticut case law instructs that it means the restoration of a person to his or her former constructive and useful role as a parent. In re Migdalia M., 6 Conn. App. 194,203, 504 A.2d 532 (1986).
The court finds that Devanice and Lexus were adjudicated as neglected and uncared for children at the Superior Court for Juvenile Matters on May 11, 1994.
Clear and convincing evidence at trial established that during a two year period from the children's placement in March 1994 until the TPR petitions were filed in March 1996, the respondent continued to abuse drugs, and to ignore her need for therapy. She also failed to make any progress towards reunification with Devanice and Lexus during this period.
The court accepts as fact the evidence which indicates that DCF made repeated and sincere offers of treatment to the mother. Unfortunately, Deltrace G. was consistently unwilling to accept the therapy, and unable to modify this self-destructive conduct. Her sporadic visitation with both children during this time played a significant role in the petitioner's ultimate decision to cut off her visitation rights.
Deltrace G. admitted during trial that she finally "hit bottom" in 1996 when she entered Elmcrest. She contends that she has remained drug free since that time and introduced recent drug tests which confirmed her abstinence from illegal drugs. Deltrace G. argued, both at trial and in her post trial memorandum, that her successful rehabilitative efforts since the summer of 1996 should compel the court to find that she could assume a responsible position in the children's life within a reasonable time.
The respondent mother also contended that Judge Keller's finding in November 1995 that further efforts at reunification were no longer necessary thwarted her ability to rehabilitate and reunify. She maintained that the court's ruling was tantamount to a termination, and that DCF thereafter offered no, or very limited, reunification services to the respondent.
This court has carefully considered, but rejects, these defenses. CT Page 10816
The mother's successful recent efforts to obtain drug treatment are certainly laudatory. But the court, in analyzing respondent's progress towards parental rehabilitation, must view it in the context of the children's situation.
Deltrace G. did not enter Elmcrest until June 1996. This was several months after the TPR petitions were filed, and approximately two years following the children's entry into foster care. Even the suspension of her visitation in September 1995 did not compel Deltrace G. to give up drugs until approximately 10 months later.
Dr. Mejia's report, although positive, does not lead this court to conclude that further time should be permitted to pursue reunification. The mother's continued occasional use of alcohol, her failure to follow through with the follow-up programs at Elmcrest and the protracted nature of her prior substance abuse lead the court to conclude that she is in the early stages of her recovery process.
The court also finds that the mother was not able to rehabilitate her relationship Devanice. The child fears and blames Deltrace G., and this attitude was exacerbated by the respondent's inattention to Devanice prior to September 1995.
It was the respondent's protracted inability to recognize and treat her drug problem, and not the termination of her visitation, nor Judge Keller's order, which resulted in the mother's failure to achieve reunification.
The court finds as proven by clear and convincing evidence that Deltrace G. has failed to achieve a sufficient degree of parental rehabilitation, as alleged by the petitioner, for a period of time in excess of one year. This occurred despite reasonable efforts by DCF to reunify the parent with her children. The court also finds by clear and convincing proof that it would be contrary to the best interests of Devanice and Lexus to allow Deltrace G. further time to pursue reunification, because she cannot assume a responsible position in either child's life within a reasonable time. In making this determination, the court has carefully considered the ages and needs of both children, and the length of time each has already spent in state custody.
ADJUDICATION AS TO DARRELLE A.
CT Page 10817
(Based on facts as of March 14, 1996)
1. No Ongoing Parent-Child Relationship
The biological father of Devanice has had only minimal contacts with the child for a number of years. He telephoned her only twice during a two year period and did not visit her at all. Although there was evidence at trial that he was incarcerated for a period of that time, DCF has proven that Darrelle A. has failed to meet any of the child's needs over the years, and has demonstrated no interest in doing so. Devanice has no positive memories of her biological father. DCF has proven by clear and convincing evidence that no parent-child relationship existed between Darrelle A. and Devanice for a period of more than one year. The court further finds, again based upon clear and convincing proof, that it would be detrimental to Devanice's best interests to allow further time for this respondent to establish such a relationship.
2. Failure to Rehabilitate
Darrelle A. informed DCF that he could not care for Devanice. He did not request rehabilitative services from DCF and, as noted above, he did not visit the child during a two year period. He has not demonstrated the willingness or inclination to play a parental role in this child's life. The petitioner has proven by clear and convincing evidence that this respondent has failed to rehabilitate, that this ground for termination has existed for more than one year, and that there is no belief that he could assume a responsible position in Devanice's life within a reasonable time. In making this determination, the court has carefully considered the ages and needs of Devanice, and the length of time which she has already spent in state custody.
ADJUDICATION AS TO LAWRENCE D.
(Based on facts as of March 14, 1996)
Lawrence D. is the putative biological father of Lexus M. He has not acknowledged paternity and has not had involvement in the life of this child. His whereabouts are unknown, and he has not requested reunification with Lexus, nor rehabilitative services.
Based on the forgoing, the court finds that the petitioner CT Page 10818 has proven by clear and convincing evidence the allegations that Lawrence D. has no ongoing parent-child relationship, and that he has failed to rehabilitate. There is no indication that he would be able to assume a responsible position in Lexus' life within a reasonable time, and it is unreasonable to allow any further time for the establishment of a parent-child relationship. Each statutory ground for termination has existed for more than one year.
DISPOSITION
Having found that grounds for termination were proven against each respondent in this case, the court now addresses the issue of disposition.
In this portion of the proceeding, DCF must prove by clear and convincing evidence that termination of parental rights would be in each child's best interests.
Devanice and Lexus have now been in state foster care for more than three and one half years. Neither child has had any meaningful relationship, nor contact, with her biological father.
Lexus, who was born with cocaine in her system on September 2, 1993, has spent all but six months of her life outside of the care of her biological mother. She has resided in the foster home of Jean H. and Victor H. in Bloomfield since May 11, 1994.[3]
(Petitioner's Exhibit 6, Page 14). Devanice, who was born on December 21, 1989, joined her half-sister in the foster home of Jean H. on August 5, 1994. She had placements in two prior foster homes before going there.
The DCF social history report indicates that "Lexus knows no other caretaker" than her present foster parents. (Petitioner's Exhibit 6, Page 14). It also states that Devanice is very bonded with the foster parents "and has indicated that "she wants to remain with them forever". (Petitioner's Exhibit 6, Page 14). Jean H. and Victor H. have expressed the desire to adopt both Devanice and Lexus. DCF reports that they love both children and that Devanice and Lexus "love them dearly." (Petitioner's Exhibit 6). The court accepts this evidence as fact.
Devanice suffers from a number of psychological problems, and has displayed serious acting out behavior. Lexus, who was born drug positive, is a very active child. It has been recommended CT Page 10819 that Lexus undergo a neurological evaluation (Petitioner's Exhibit 6, Page 13).
Termination has been recommended as being in the best interests of each child by the petitioner, the children's attorney, Dr. Kreibeck and Dr. Tylenda. Dr. Mejia, who performed a psychological evaluation of Deltrace G. in March 1997, recommended that decision on termination be deferred for a while to ascertain if the mother could maintain substance-free status and document that she is able to adequately care for the child in her custody. Dr. Mejia only evaluated Deltrace G. He did not assess either Devanice or Lexus, and he was not requested to do so by the court. His report is not, and does not purport to be, an evaluation of the best interests of these children.
Dr. Kreibick and Dr. Tylenda both opined that termination of parental rights, and adoption by the present foster parents, is in the best interests of Devanice. Dr. Kreibick has indicated that the biological mother does not appear able to maintain a consistent healthy mother-child relationship with Devanice, in which the best interest and safety of Devanice would be her primary concern. She has also stated the opinion that Devanice should not be separated from her half-sister, Lexus. (Petitioner's Exhibit 6, Pages 20-21).
DCF Social Worker Angelique Pearson noted in the social study which she prepared for this case that:
 ". . . [to] allow mother additional time to rehabilitate is not in the best interests of the children, because they have suffered enough neglect, abuse and abandonment in their young lives."
(Petitioner's Exhibit 6, Page 22).
The court finds the professional opinions and recommendations of the social worker and Drs. Kreibick and Tylenda to be credible and accurate, and accepts them as fact.
The intervenor, Vera A., testified at trial that she requested DCF to consider her as a placement resource. She stated that she did so after her son, Darrelle A., asked her to take Devanice. CT Page 10820
Vera A. contacted DCF, and attended several court hearings concerning Devanice at the Superior Court for Juvenile Matters in Hartford. Vera A. was fingerprinted and evaluated as a possible placement resource by the petitioner.
Evidence at trial indicated that DCF ultimately decided that the paternal grandmother would not be an appropriate custodian. Apparently, DCF believed that Vera A. had answered evasively when she was questioned about whether or not her son Earl,[4] who had a criminal record, was living in her home. DCF was also apparently concerned about Darrelle A.'s criminal record, and the possible exposure which Devanice might have to the activities of Darrelle and Earl, if she lived with the paternal grandparents.
Vera A. testified that DCF never advised her that she had been eliminated from consideration as a placement resource for Devanice. She also said that she was never advised of the rationale behind the petitioner's decision. The court accepts her testimony on this issue as credible, and believes that DCF's lack of communication with Vera A. was unfortunate. The evidence at trial established that Vera A. is a hardworking and caring individual, who was interested in providing a home for both Devanice and Lexus. She deserved the courtesy of a formal reply concerning her request for consideration as a relative placement resource.
Vera A. has not been allowed to visit the children as a result of the psychologists' recommendation and the DCF decision terminating all familial contact in September 1995. She argued both in the dispositional phase, and in her post-trial memorandum, that DCF unfairly failed to consider her as a placement resource. She also maintained DCF does not have grounds to terminate Darrelle A.'s parental rights, and that the disposition of termination would have been unnecessary if DCF had given fair consideration to her request for transfer of guardianship.
The court, while believing that Vera A. could have been treated with greater sensitivity by the petitioner, does not accept her legal arguments with respect to either adjudication, or disposition.
The evidence at trial clearly and convincingly established that Darrelle A. was uninvolved in Devanice's life and uninterested in her welfare, and that he had not taken any CT Page 10821 meaningful steps to habilitate a parental relationship with the child.
Vera A., although caring and well-intentioned, did not establish that all of DCF's concerns were unfounded, or that placement in her home would best serve the interests of Devanice and Lexus. Furthermore, the court notes that the intervenor admitted during cross examination at trial that she has not had experience raising a special needs child. She also testified that she is currently separated from her husband, and has experienced some domestic discord, as a result of the grief which both she and her husband feel over Earl's death.
The court does not find, therefore, that the dispositional alternatives suggested by Vera A. would be preferable to the continued placement of both children in their present foster home. The court finds that both Devanice and Lexus have thrived in the care of Jean H. and her husband and have found the love, nurturance and security which they both need. It would be potentially very damaging to Devanice and Lexus to uproot them yet again for placement with different caretakers. The court finds that it is in the best interests of Devanice and Lexus that they remain with their present foster parents.
Before this court may enter judgment, it is required by C.G.S. 17a-112 (d) to make the following written findings based upon the clear and convincing evidence adduced at trial:
1. Services offered: DCF and other agencies have offered numerous services to Deltrace G. in order to help her battle her substance abuse problem and reunify with her children. These have included the Hartford Hospital Project Recovery drug program, the Lifeline Drug Program, in-patient treatment at Blue Hills Clinic, a substance abuse evaluation with Dr. Adelia Moore, the Community Health Services Chemical Dependency Program, psychological evaluations, visitation, transportation and referral to a parent aid program. The court finds that the biological mother largely failed to cooperate with, and take advantage of, these reasonable and appropriate offers of assistance.
Darrelle A. and Lawrence D. have not had any meaningful involvement in the lives of their respective daughters. Neither requested services of DCF. Accordingly, DCF could not offer services to either respondent. CT Page 10822
2. Reasonable efforts to reunite:
Through court approved expectations, offers of the services referred to above, and the facilitation of visitation prior to September 1995, DCF made reasonable efforts to reunite Deltrace G. with Devanice and Lexus.
Because of the lack of involvement of Darrelle A. and Lawrence D., the petitioner was precluded from making reasonable efforts to reunite them with their children.
3. Court Orders:
Court approved expectations were entered at the Superior Court for Juvenile Matters on May 11, 1994. The respondent, Deltrace G., failed to comply with most of them. No expectations were established for either Darrelle A. or Lawrence D. Due to their lack of involvement, it was not possible to set expectations for either of these respondents.
In November, 1995, the court (Keller, J.) entered an order that further efforts to reunify Deltrace G. with Devanice and Lexus were no longer appropriate. This order was issued by Judge Keller more than a year and one half after the children had been placed in foster care. During that time the respondent continued to abuse drugs and alcohol, and refused numerous offers of rehabilitative therapy and assistance. This court order followed DCF's administrative decision to cut-off visitation between Deltrace G. and her children, after two psychologists opined that the ongoing contacts were traumatizing Devanice. Given the totality of the evidence produced at trial, this court affirms the order of Judge Keller as being consistent with the best interests of the children.
4. Emotional Ties:
Devanice and Lexus have close emotional bonds with Jean and Victor H. Lexus knows no other caretakers, and regards them as her parents. Lexus does not know her biological father. Devanice knows that her father was in jail, and has bemoaned the fact that she does not have a "real father" like other children do. She knows her biological mother and may have some residual feelings of a positive nature about her. However, she also has very strong negative feelings towards her biological mother. Devanice is very fearful of Deltrace G. She regards Jean H. as her "real mommy". CT Page 10823 The child has emphatically indicated her desire to permanently remain with her current foster parents, whom she loves and regards as her parents.
5. Ages of the Children:
Devanice was born on December 21, 1989. She is seven years old. Lexus was born on September 20, 1993. She is four years old.
6. Efforts to Adjust:
For more than two years after Devanice and Lexus were placed in DCF custody, Deltrace G. continued to abuse drugs and alcohol, and consistently failed to cooperate with treatment and reunification services. Since June 1996, she has made progress in overcoming her addiction. These efforts are commendable. However, the court also notes that the mother failed to complete the aftercare program recommended by Elmcrest. The court does not accept the respondent's explanation that child care problems precluded her from doing so. The respondent admitted at trial that she still engages in the moderate, occasional use of alcoholic beverages, and denies that alcohol abuse was ever a major problem for her. This was controverted by the Elmcrest discharge report, and other evidence which indicated that Deltrace G. chronically abused both illegal drugs and alcohol.
The court finds that although Deltrace G. has made efforts to adjust her conditions, conduct and circumstances during the past year, they have not been timely enough, nor sufficient enough, to justify a delay in immediate permanency planning, nor to suggest that it would be in the best interests of the children to return them to the mother's home in the foreseeable future.
Darrelle A. and Lawrence D., have not made any efforts to adjust their circumstances, conduct and/or conditions.
7. Impediments to Parent Child Relationship:
DCF terminated visitation between Deltrace G. and the children in September 1995. Judge Keller found in November 1995 that further efforts by DCF to reunify the mother with the children were no longer appropriate. For reasons stated at length above, this court has determined that those actions of the petitioner and the court were justified and reasonable. The court finds that no unreasonable act or conduct of any agency or CT Page 10824 individual, and no adverse economic circumstance, prevented any of the respondents from maintaining a meaningful parent-child relationship.
Judgment and Orders
Having considered the seven factors enumerated above, and having found as proven at least one ground alleged for termination of parental rights against each respondent, the court further finds as proven by clear and convincing evidence that it is in the best interests of Devanice and Lexus that parental rights be terminated, so that these children may be freed for adoption. The childrens' ages, their special needs, the length of time each has already spent in DCF custody, and the long-standing failure of each parent to rehabilitate and display interest in the children all demonstrate that such a disposition is imperative to the best interests and well-being of Devanice and Lexus.
Accordingly, it is hereby ORDERED that the parental rights of Deltrace G. with respect to the minor children Devanice A. and Lexus M. be, and hereby are, terminated.
It is hereby ORDERED that the parental rights of Darrelle A, with respect to Devanice A., be and hereby are, terminated. It is hereby ORDERED that the parental rights of Lawrence D., with respect to Lexus M. be, and hereby are, terminated.
It is FURTHER ORDERED that the Commissioner of the Department of Children and Families be appointed the statutory parent of said children, for the purpose of securing an adoptive home or other permanent placement for them. Said Commissioner shall file with this court, no later than 90 days following the date of this judgment, a written report concerning the progress achieved towards such permanent placement. If adoption has not been finalized by February 15, 1999, then said Commissioner is ordered to file a Motion for Review of Plan for Terminated Child, which shall be heard no later than May 15, 1999.
The court respectfully recommends that if it is deemedtherapeutically appropriate for the children, and if there is agreement by the foster parents or adoptive parents, consideration be given to Vera A.'s request for visitation with Devanice. Since Devanice may have some knowledge of her paternal grandmother, and may reside in fairly close proximity to her in CT Page 10825 the foreseeable future, such contacts may be appropriate, and possibly even advantageous, for the child at some future date.
The court commends all of the counsel in this case for the professional and dignified manner in which they represented their respective clients.
Date at Middletown, Connecticut this 22nd day of October, 1997.
BY THE COURT:
Dyer, J.